## MANN *a.* PROVOST.

*Supreme Court, Second District ; Special Term, November,* 1856.

EXCUSABLE NEGLECT.—PROCEEDINGS TO COMPEL DETERMINATION
OF CLAIMS TO REAL PROPERTY.

Where, upon a motion to open a regular judgment entered upon failure to answer,
it appeared that an answer was prepared by defendant's counsel in due season,
but was not served, for the reason that he believed plaintiff's proceedings to be
irregular,—that defendant's counsel made repeated efforts to see plaintiffs person-
ally, in order to have the irregularity corrected, but was unsuccessful,—and that
he understood from plaintiffs' attorney that no further steps would be taken until
he could have an interview with plaintiffs,—*Held,* that this was a case of surprise
or excusable neglect authorizing the court to open the judgment upon terms.

Since the act of 1855. (*Laws,* 943, *ch.* 511,) relating to the proceedings authorized
by the Revised Statutes, (2 *Rev. Stats., tit.* 2, *pt.* 3, *ch.* 5,) to compel a determi-
nation of claims relative to real property, those proceedings have lost the mere
statutory character they once possessed, and are become an action regulated by
the Code.

The court has power to open a judgment entered upon failure to answer, in such
an action.

Motion to open a judgment entered upon failure to answer
and to allow defendant to answer.

This action was brought by Abijah Mann, Jr., and Charles
A. Mann against David Provost. It was an action to compel
the determination of a claim made by defendant to certain
real estate owned and possessed by the plaintiffs, at Green
Point, Kings County. It was a proceeding " to compel the
determination of claims to real property," according to Title 2,
of Chapter 5, of Part 3, of the Revised Statutes, (2 *Rev. Stats.,*
312, § 1), and was prosecuted by action pursuant to section
449 of the Code. The proceedings had were in conformity
with the act of 1855, to amend the Revised Statutes on that
subject, (*Laws of* 1855, 943, *ch.* 511). The summons and com-
plaint were duly served upon the defendant. The summons
required the defendant to appear and answer within *twenty*
days. He did not appear and answer within forty days. The
plaintiffs thereupon filed proof of the service and of the failure

to answer, and, pursuant to section 6, title 2, as amended by section 3 of the act of 1855, entered with the clerk a judgment of the court, as of course, whereby the defendant and all persons claiming under him by title accruing subsequent to February 12, 1856, (the day when the summons and complaint were served), were forever barred from all claim to any estate of inheritance or of freehold in the premises, or any part thereof.

The defendant now moved to open that default and vacate the judgment, and to be allowed to put in his answer, and go to trial. His affidavits established the fact that his answer was prepared before the default and judgment; but that it was not served for the reason that his counsel deemed the plaintiffs' proceedings irregular in requiring an answer within twenty days and in other respects. He called repeatedly on the plaintiffs for the purpose of having irregularities corrected; but did not see them. But he obtained the impression from the plaintiffs' attorney, whom he did see, that the plaintiff, A. Mann, Jr., who had charge of the proceedings, would take no farther steps till after defendant's counsel had seen him. It did not appear that Mr. Mann was informed of the fact that defendant's counsel had called on him.

There was evidence on the part of the plaintiffs tending to show that the claim made by defendant to the lands in question was an unfounded one, and made for the purpose of throwing a cloud on the plaintiffs' title, and compelling a compromise.

*W. Fullerton*, for the motion.

*A. Mann, Jr.*, for plaintiffs.

Birdseye, J.—I am satisfied that the failure to serve the answer arose from desire entertained by defendant's counsel in good faith, to correct what he believed to be an irregularity, and thus to expedite the proceedings. The defendant is not in any manner connected with the delay. I cannot resist the conclusion that here is a case of surprise or excusable neglect, calling for the interposition of the court, if there is any legal authority for granting it. The counsel, acting in good faith, suffered the default. I cannot examine the merits of the

defendant's case, and for an apparent want of them, refuse him the usual opportunity of establishing his claim by the ordinary proceedings of answer and trial,—he having made the usual general affidavit of merits.

The main question presented is whether this court can interpose to open this default. The sixth section of the statute, as now amended, declares that a judgment, such as this is, shall forever bar the defendant, and all claiming under him, from all claim to any estate of inheritance or freehold in the premises. It is insisted by the plaintiffs that this proceeding is regulated solely by the statute; that the statute confers no authority to open judgments, or set aside defaults,—and that, as by statute, the judgment is entered by the party, as of course, and without the intervention of the court, so the court has no dispensing power to interfere with it. And the case is likened to that of a party who has failed to appeal from a judgment against him within the time presented by law.

There is force in this argument, and it is supported by the intimation of the court in Williams *v.* Cox, (6 *Wend.*, 519). There the court set aside a default for not appearing and pleading to the title, but no judgment had been entered; and they seem to have inclined to the opinion that if the judgment had been entered, it would have been beyond their power to set aside, and would have barred the claim of the defendant forever. The proceedings in that case were, however, merely statutory. If they would at any future stage have resulted in an action of ejectment, they had not then done so, but depended solely on the statute. Now, by section 449 of the Code, the remedy of an action is substituted for the anomalous proceedings prescribed by the Revised Statutes; for, I think, the word "may" in this section is to be read "shall." The statute directs the thing to be done for the sake of justice and the public benefit and convenience, in order to take away the abnormal character given to the proceedings by the original law, and conform them to the ordinary course of proceedings in courts of justice. (*Dwarris on Statutes*, 712).

I am aware that it has been held, that there were insuperable objections to taking the proceedings pointed out by the Revised Statutes by an action under the Code. (Crane *v.* Sawyer, 5 *How.*

*Pr. R.*, 372). The contrary, however, was held in Hammond *v.* Tillotson, (18 *Barb.*, 332), after a careful examination of the statutes. And whatever difficulty existed before is removed, I apprehend, by the act of 1855. That act seems to have been passed in view of these two decisions, and with intent to remove the various obstacles found to result from the attempt to unite two incongruous systems; and though there is yet an apparent conflict between the special provision in the Revised Statutes, and the general directions of the Code, as to the time for appearing and answering, it was properly admitted at the argument that it passed away upon a critical examination of the statute.

By the act of 1855, the person in whose behalf the notice mentioned in the Revised Statutes shall have been served, shall be called the plaintiff, and the other party the defendant. The defendant may, in his answer, allege certain matters in bar of all further proceedings. The plaintiff is to reply to such answer within twenty days. The issues thus formed are to be tried in the same manner as issues in *other personal actions* are required to be tried, and the successful party shall be entitled to judgment for such relief as he shall be entitled to, with costs *as in other personal actions under the Code.* It is also to be noted that, by section 308 of the Code, an additional allowance may be given to the successful party in proceedings to compel the determination of claims to real property. And by sections 304 and 305, the successful party is entitled to the specific costs fixed by law when a claim of title to real property arises on the pleadings.

On a view of all these provisions of the several statutes, I am constrained to the conclusion that these proceedings have lost the mere statutory character they once possessed. That they are now, to most if not all intents, an action within section 2 of the Code. That the relief sought is special, and some of the proceedings are peculiar, and required to conform to the provisions of a particular statute, does not warrant a different conclusion. For no one doubts that proceedings to foreclose a mortgage, or obtain a partition or sale of land, or for waste, are, within the meaning of the Code, actions.

If the present proceedings are an action, then this court,

by section 174 of the Code, possess the power to relieve the defendant from the judgment taken against him, through mistake, surprise or excusable neglect. But as the plaintiff's proceedings are regular in all respects, the judgment can only be set aside on terms. The defendant must pay the costs of entering up the judgment, and ten dollars costs of opposing this motion. He must also, as required by section 6 of the present law, set forth in his answer the title claimed by him in the premises; to the end that the present suit may determine not merely the possession, but the conflicting claims of the parties to the lands in dispute. The plaintiffs may also have the date of the issue fixed as of the day when the answer was originally due ; or at their election, may have the case referred for hearing and decision.